16 So.2d 908

In re ARMSTRONG.

No. 37042.

Dec. 13, 1943.

Dissenting Opinion Dec. 21, 1943.

Rehearing Denied Feb. 7, 1944.

Charles A. McCoy, of Lake Charles, Hollingsworth B. Barret, of Shreveport, Frank Wm. Hart, of New Orleans, Guy V. Rich, of Bogalusa, and Benjamin Y. Wolf, of New Orleans, Supreme Court Committee on Professional Ethics and Grievances.

Charles J. Rivet, of New Orleans, for exceptor.

O'NIELL, Chief Justice.

■ The Louisiana State Bar Association, through the Committee on Professional Ethics and Grievances, is suing to disbar the defendant for alleged professional misconduct. The case therefore comes under the original jurisdiction of the court.

This is one of four of such repercussions of the decision rendered in the case of Perez, District Attorney v. Meraux, Judge, 201 La. 498, 9 So.2d 662, in which Judge Meraux was removed from the office of Judge of the District Court for the 25th Judicial District, composed of the Parishes of St. Bernard and Plaquemines. One of the charges in the petition for the removal of Judge Meraux was that his court had been conducted as a divorce mill, having granted divorces and annulments of marriages in 100 cases described in the petition as collusive and fraudulent lawsuits. In the 100 lawsuits referred to in the opinion rendered in the removal of Judge Meraux four lawyers were involved as the attorneys of record, each representing either the plaintiff or the defendant in several of the 100 lawsuits in which the alleged collusive judgments were obtained. The defendant in this case is one of the four lawyers.

In the petition in this case it is alleged that the defendant, Armstrong, acted in his professional capacity as attorney at law in 29 of the 100 suits for divorce or for annulment of a marriage, and that judgments were obtained in the 29 cases by fraud or collusion between the plaintiff and defendant and with the concurrence of the presiding judge. The 29 suits are listed and identified in the Committee's petition by their title and number on the docket of the 25th Judicial District Court in and for the Parish of St. Bernard.

It is alleged in the Committee's petition that an investigation of the defendant's professional conduct was had by the Committee, as provided for in Section 3 of Article XIII of the Articles of Incorporation of the Louisiana State Bar Association, which article embodies the rules adopted by this court on the subject of disbarment; and that the Committee found that sufficient cause existed for the filing of this suit for the disbarment of the defendant.

He filed several exceptions to the petition of the Committee, the first and most important exception, as dealt with by both sides in the arguments made and in the briefs filed in this court, is that the Committee failed and refused to give the defendant reasonable notice or sufficient information of the charges or complaints which the Committee intended to investigate, as required by Article XIII of the Articles of Incorporation of the Louisiana State Bar Association,—specifically, by Sections 3, 4 and 5 of that article. These sections provide:

"Section 3. *Rights of Person Complained Against, and Subpoenas.* Any person complained against shall be given notice thereof and a reasonable opportunity to defend himself before the committee, by introducing evidence and by cross-examining the witnesses against him, and shall have the right to be represented by counsel. Both the committee and the person complained against shall have the right to

compel the attendance of witnesses at any and all meetings of the committee during its investigation, and shall have the right to compel the production of any books, records, documents or other evidence that may be relevant to the matter under investigation; and to that end the committee may subpoena witnesses and issue writs of subpoena duces tecum.

"Section 4. *Disbarment and Suspension.* If, after investigation, a majority of the Committee shall be of the opinion that the member against whom the complaint has been made has probably been guilty of a violation of the laws of the State of Louisiana relating to the professional conduct of lawyers and to the practice of law, or of a willful violation of any rule of professional ethics of sufficient gravity as to evidence a lack of moral fitness for the practice of law, it shall be the duty of the Committee to institute in the Supreme Court a suit for the disbarment or suspension of the accused member of the bar, and to designate one or more of their number to prosecute the same.

"Section 5. *Reprimand.* If, after investigation, a majority of the Committee shall be of the opinion that the member against whom the complaint has been made has not been guilty of such misconduct as to require a suit for disbarment or suspension, but is nevertheless of the opinion that the member has been guilty of a willful violation of a rule of professional ethics, it shall be the duty of the Committee to reprimand the member privately in writing."

The notice given by the Committee to the defendant, of the investigation which the Committee intended to make, was given in a letter signed by the secretary of the Committee, dated January 15, 1942, reading thus:

"I have been directed by the undersigned Committee to notify you that an investigation will be had by it of the alleged improper obtaining of divorces by you in various cases in the Parish of St. Bernard.

"I have been further directed by the Committee to notify you that this investigation will begin at 10 A.M. on Friday, January 30, 1942, in the Committee's office, 404 Union Building, New Orleans, and that you are required to be present at that time and place with any witnesses or documentary evidence you may wish to produce in your behalf."

The attorney representing the defendant, in a letter addressed to the Committee, dated January 26, 1942, answered by quoting the secretary's letter in full and by making the following request:

"As I read the rules governing the operations of your Committee, they require that 'any person complained against shall be given notice thereof and a reasonable opportunity to defend himself'.

"Your letter does not indicate that my client has been 'complained against', and the general statement that an investigation will be had of the alleged improper obtaining of divorces by him in various cases furnishes no opportunity for defense.

"Your authority to institute a suit for disbarment or suspension, or to reprimand, appears to be limited to cases involving violation of the laws of the State relating to the professional conduct of lawyers and to the practice of law, or involving wilful violation of any rule of professional ethics.

"I have not been able to find any authority in your Committee to summon my client before you in aid of an investigation not predicated upon a specific complaint.

"If I am in error in my conclusions I should appreciate your referring me to the authority under which you purpose to act.

"If my client has been 'complained against' in a matter involving 'violation of the laws of the State of Louisiana relating to the professional conduct of lawyers and to the practice of law, or of a wilful violation of any rule of professional ethics,' I request that you give him notice thereof with a reasonable opportunity to defend himself.

"It will be impossible to produce witnesses or documentary evidence in my client's behalf on January 30, 1942, in the absence of notice of the complaint against him and of specific information as to the charges against which he is to defend himself."

On receipt of the letter from the attorney for the defendant, the chairman of the Committee replied verbally—perhaps by telephone—and referred the defendant's attorney to the case entitled In re Steiner, No. 36,315 of the docket of this court, as the authority of the Committee to proceed with the investigation without giving the defendant any further notice or informa-tion concerning the complaint or charges which the Committee would investigate. On January 29, 1942, the attorney for the defendant wrote and delivered the follow-' ing letter to the Committee:

"Gentlemen: Promptly after receipt of my letter of the 26th your Chairman referred me to the Steiner case as the basis upon which you claim authority to proceed as outlined in your letter of the 15th to Mr. Armstrong.

"I have examined record No. 36,315 of the docket of the Supreme Court in which Steiner was denied a writ of prohibition against your Committee. I am unable to perceive any conflict between my position and the grounds upon which the Court refused the aforesaid writ.

"Steiner sought no other relief than to have your Committee restrained from proceeding with an investigation until formal charges or complaint had been filed against him

"I have not questioned your right to embark upon any investigation that you may deem consistent with your duties. I can think of no basis upon which you could be restrained from engaging in such enterprise. I do challenge your right to submit my client to an inquisition while you engage in the process of detection, and I challenge your right to call upon him to defend himself against unspecified charges not supported by any complaint whatsoever.

"I know of no rule of law or ethics that requires of a member of the Association that he assist your Committee in the detection of suspicions which it may entertain.

"I submit that the word 'investigation' in Sections 3, 4 and 5 of Article XIII is used in the sense of a 'hearing' following a complaint, and cannot be a synonym for 'detection' to support a complaint.

"If you succeed in detecting any probable violation by my client of the laws of the State relating to the professional conduct of lawyers and to the practice of law, or a violation of any rule of professional ethics, I insist that he shall then be entitled to notice of the complaint and a reasonable opportunity to defend himself before your Committee, prior to the institution of any suit against him.

"I reiterate the position taken in my letter of the 26th that your communication of the 15th is not the notice of complaint required by the Rules of the Supreme Court for the exercise of your jurisdiction, and that it does not afford my client the reasonable opportunity to defend himself before your Committee to which the Rules entitle him.

"The Rules must be construed in such a way as not only to vest the Committee with proper authority but also to protect members of the profession against persecution, harassment and other abuse of power.

"Entertaining an abiding conviction of the soundness of my position, I am in duty bound to advise my client that until he is notified of a complaint and is given a reasonable opportunity to defend himself before your Committee, he is not failing in duty or respect in not participating in the processes of detection which you will begin at 10 A.M. on Friday, January 30th, 1942."

At the appointed hour on January 30, 1942, the Committee met and in the absence of the defendant and of his attorney, proceeded to make the investigation required by Sections 3, 4 and 5 of Rule XIII, as a condition precedent to the filing of disbarment proceedings. The chairman of the Committee showed the other members the notice which had been sent to the defendant, dated January 16th, and the two letters which had been received from the attorney for the defendant, complaining of the insufficiency of the notice or information given to the defendant. The chairman expressed to the other members of the Committee his opinion that the ruling which this court had made in the Steiner case was sufficient authority for the Committee to proceed with the investigation of the defendant without giving him any further notice or information than that which was given in the letter dated January 15th. The Committee then proceeded with the investigation by hearing the testimony of a man who had been the defendant in one of the divorce suits mentioned in the Meraux case, and the testimony of Judge Meraux himself, after which the chairman of the Committee offered in evidence the original records in 35 divorce suits and annulment suits, including the records in the 29 cases referred to in the petition of the Committee in this case. Thereafter the Committee concluded that the defendant was probably guilty of a willful violation of professional ethics of sufficient gravity to warrant the institution of a suit for his disbarment. Accordingly, the Committee filed this suit on February 12, 1943, that is, more than a

year after the date of commencing the investigation.

It is stated in the Committee's brief that the question raised by the defendant's plea in this case is not a new question,—that the question was put at rest by the ruling made in the case entitled In re Steiner, No. 36,-315 of the docket of this court. From which we infer that the Committee was misled by our ruling in the Steiner case. The error is attributable perhaps to the brevity with which we gave our reason for refusing to grant Steiner a writ of prohibition,—thus: "Writ refused, the Committee is not exceeding its authority." The difference between Steiner's case and this case is that Steiner petitioned the court for a writ of prohibition merely to prevent the Committee from making an investigation of his professional conduct without having received a complaint of his having been guilty of professional misconduct. The gravamen of Steiner's complaint to the court was that the investigation which the Committee was about to make would prejudice him in his defense in certain criminal charges that were then pending against him in the Criminal District Court. He did not, in his petition to this court, seek to prevent the Committee from filing disbarment proceedings against him without first complying with Sections 3, 4 and 5 of Article XIII of the Articles of Incorporation of the Louisiana State Bar Association. In the present case the defendant, Armstrong, did not protest against the Committee's making an investigation of his professional conduct. His protest was against the Committee's failure to give him the required notice before making such an investigation as Sections 3, 4 and 5 of Article XIII require as a basis for the filing of a disbarment suit against him. As far as the record discloses, Armstrong had no knowledge before this suit was filed that the Committee had concluded to file the suit. For that reason, as far as the record shows, he had no cause to invoke the supervisory jurisdiction or authority of the court to prevent the filing of this suit.

What we meant by the statement in the Steiner case, "The Committee is not exceeding its authority", was that the Committee had authority to make any informal investigation that it might see fit to make of the professional conduct of any lawyer without receiving a complaint of misconduct on his part. Or the Committee might make a preliminary investigation merely as a prelude to the making of the formal investigation required by Sections 3, 4 and 5 of Rule XIII as a sine qua non for the filing of a disbarment suit against an attorney.

The importance—or rather the indispensability—of a compliance with Sections 3, 4 and 5 of Rule XIII is emphasized by considering the genesis of Section 3. The provisions of that section were made originally, in substantially the same words, in Section 26 of Act No. 10 of the 2nd Extra Session of 1934, creating "A public corporation to be known as 'The State Bar of Louisiana'." That statute was repealed by Act No. 55 of 1940; and by Act No. 54 of the same session the Legislature memorialized the Supreme Court to establish an integrated bar by organizing

all of the members of the bar into an association to be known as the Louisiana State Bar Association, and to prescribe rules and requirements for membership in the association. In compliance with Act No. 54 of 1940, the court appointed an advisory committee to prepare articles of incorporation for the Louisiana State Bar Association, and the articles were formally adopted by the court on March 12, 1941. Previous to that date the rules of the court did not contain the provisions made in Section 3 of Article XIII,—which provisions however were made, as we have said, in Section 26 of Act No. 10 of the 2nd Extra Session of 1934. When that statute was repealed by Act No. 55 of 1940, and was superseded by the charter of the Louisiana State Bar Association adopted in compliance with Act No. 54 of 1940, it was deemed necessary to embody in Rule XIII the same provisions which were made theretofore in Section 26 of Act No. 10 of the 2nd Extra Session of 1934, to protect the rights and shelter the reputation of any lawyer whose professional conduct might be investigated by the Committee on Professional Ethics and Grievances to determine whether disbarment proceedings should be filed against him.

In February 1941,—which was a month before the Articles of Incorporation were finally approved by the court,—a projet, called by the Committee "A proposed Form of Articles of Incorporation", was printed, as a booklet, similar to the form in which the articles are now published, and was distributed among the members of the Supreme Court and the 15 members of the Advisory Committee who had drafted the proposed rules. The purpose of distributing the projet, as explained in the letter accompanying it, was to allow the members of the court to propose any change or amendment that might be considered necessary or advisable. The printed projet, as submitted to the members of the court, did not contain the provisions which had been made in Section 26 of Act No. 10 of the 2nd Extra Session of 1934, and which were afterwards adopted as Section 3 of Article XIII of the Articles of Incorporation. On the suggestion of the court the provisions of Section 26 of Act No. 10 of the 2nd Extra Session of 1934, in substantially the same words in which they appeared in the statute, were inserted as Section 3 of Article XIII of the proposed Articles of Incorporation. We have compared a printed copy of the projet, or "Proposed Form of Articles of Incorporation", with the articles of incorporation as finally adopted, and the comparison shows that Section 3 of Article XIII, as adopted, was inserted between Sections 2 and 3 in that article in the projet, and that Section 3 in the projet became Section 4 in the articles as adopted, and that Section 4 in the projet became Section 5 in the articles as adopted, —et sic de ceteris,—so that this article, XIII, has 15 sections instead of only the 14 sections in the corresponding article in the projet. This comparison therefore shows that Section 3 of Article XIII was adopted advisedly and with the deliberate purpose of retaining for the members of the bar the protection which was afforded them theretofore by the provisions of

Section 26 of Act No. 10 of the 2nd Extra Session of 1934.

The importance of the provisions of Section 3 of Article XIII was explained fully in the opinion rendered in the disbarment suit entitled In re Jones, 202 La. 729, 12 So.2d 795, 796. One of the pleas or exceptions filed by the defendant in that suit was similar to the one which we are considering now. The court dismissed the suit against Jones for a substantial reason, which prevented a renewal of the suit on the same cause of action; but, apparently for future guidance, the court discussed at length and with approval the defendant's exception to the suit, and analyzed and explained Sections 3, 4 and 5 of Article XIII of the Articles of Incorporation,—thus:

"The Legislature of the State of Louisiana, however, by its Act No. 54 of 1940, memorialized the Supreme Court 'to exercise its inherent powers' and provide for the organization and regulation of the Louisiana State Bar Association and the members thereof, including their disciplining, suspension, or disbarment.

"Acting pursuant to the memorial addressed to it by the Legislature, this court, by its order of March 12, 1941, organized the Louisiana State Bar Association, and, by the same order, made the articles of incorporation of the association the rules of the court by which the association, as an agency of the court, is governed.

"For the protection of the integrity of the bench and the bar, under the heading 'Discipline and Disbarment of Members,'

provision is made in these articles of incorporation for the appointment by this court, upon the recommendation of the Board of Governors, of a Committee on Professional Ethics and Grievances (Section 1 of Article XIII), whose duty it shall be to investigate 'All complaints looking to the suspension or disbarment of any member of the Bar of Louisiana * * *.' Section 2. However, to protect the members of the association against the effect of unfavorable publicity by reason of unfounded or frivolous complaints, provision is also made for the giving of notice to any member against whom a complaint has been lodged in order that he may have 'a reasonable opportunity to defend himself before the committee' before any disbarment or disciplinary proceedings may be instituted. (Section 3) But, 'If after investigation, a majority of the Committee shall be of the opinion that the member against whom the complaint has been made has probably been guilty of a violation of the laws of the State of Louisiana relating to the professional conduct of lawyers and to the practice of law, or of a willful violation of any rule of professional ethics of sufficient gravity as to evidence a lack of moral fitness for the practice of law, it shall be the duty of the Committee to institute in the Supreme Court a suit for the disbarment or suspension of the accused member of the bar, and to designate one or more of their number to prosecute the same,' or 'If after investigation, a majority of the Committee shall be of the opinion that the member against whom the complaint has been made has not been guilty

of such misconduct as to require a suit for disbarment or suspension, but is nevertheless of the opinion that the member has been guilty of willful violation of a rule of professional ethics, it shall be the duty of the Committee to reprimand the member privately in writing.' Section 5. (Italics ours)."

The opinion was rendered in the case entitled In re Jones, 202 La. 729, 12 So.2d, 795, on February 1, 1943, which was a year and seven months subsequent to the ruling in the Steiner case. There is in fact no inconsistency between the opinion rendered in the Jones case and the ruling made in the Steiner case.

█ Our opinion is that the defendant in this case was entitled to more information than the Committee gave him in the notice dated January 15, 1942, informing him merely that an investigation would be had at the time and place stated, of alleged improper obtaining of divorces by him in various cases in the Parish of St. Bernard. Section 3 of Rule XIII requires that any person complained against shall be given notice thereof and a reasonable opportunity to defend himself before the Committee, et cetera. Of course, if the defendant or his attorney had not requested more information concerning the matters to be investigated, the notice dated January 15, 1942, would have been a sufficient compliance with Section 3 of Article XIII. But, when the defendant, through his attorney, asked for a specification of the complaints with regard to his handling of divorce suits in the Parish of St. Bernard, he should have received the information in order to be

prepared to exonerate himself of willful wrongdoing, or at least to so mitigate any offense on his part as to justify only a private reprimand by the Committee, as provided for in Section 5 of Rule XIII. It would not have been a difficult task for the secretary of the Committee to analyze the testimony on this subject, as reported in the Meraux case, and to examine the records of the divorce suits and annulment suits referred to in that testimony, and to furnish the Committee—and in turn the defendant in this case—a specification of the proceedings or conduct which the Committee considered objectionable. If that had been done the defendant might have gone before the Committee prepared to give a satisfactory explanation of the procedure and of his conduct in the cases in St. Bernard Parish, and thus either to completely exonerate himself or at least to mitigate his supposed offending so as to incur only a private reprimand by the Committee.

It is argued in the brief for the Committee that, inasmuch as "the defendant now has the opportunity to defend this suit, there is no reason why the court should go through the useless formality of remanding the case to the Committee." One of the purposes of Sections 3, 4 and 5—as expressed in the concluding words of Section 5—of Rule XIII—is to avoid publicity of an investigation of a complaint against an attorney unless and until the investigation results in the filing of a disbarment suit, after a majority of the members of the Committee have concluded that the lawyer complained against has been prob-

ably guilty of a willful violation of a rule of professional ethics of sufficient gravity to evidence a lack of moral fitness for the practice of law. But the remanding of this case to the Committee, or a dismissal of the suit, in order to give the defendant sufficient information and a reasonable opportunity to defend himself before the Committee, would not be a useless formality; because it is possible that, if the defendant is given sufficient information and a reasonable opportunity to defend himself before the committee, if another investigation is made by the Committee, he might convince a majority of the members of the Committee that he has not been guilty of a willful violation of any rule of professional ethics of sufficient gravity to evidence a lack of moral fitness to practice law. Or, if given a reasonable notice and sufficient information in advance of another investigation of the Committee, the defendant might convince a majority of the members of the Committee that he "has not been guilty of such misconduct as to require a suit for disbarment or suspension" even though a majority of the members of the Committee might be of the opinion yet that the defendant "has been guilty of a willful violation of a rule of professional ethics" such as to make it the duty of the Committee to reprimand him privately in writing. Therefore, although a dismissal of this suit, to afford the defendant a reasonable notice and sufficient information of the complaint of the Committee before another investigation is had, cannot undo the publicity and consequent humiliation caused by the filing of the pres-

ent suit, nevertheless a dismissal of the suit, for the purposes stated, would afford the defendant a substantial right,—to have a chance to defend himself successfully before the Committee. Another thing to be considered is that a strict application of Sections 3, 4 and 5 of Rule XIII will tend to lessen the number of disbarment suits coming to the court.

■■ Our conclusion is that this suit should be dismissed, reserving to the Committee the right to renew the suit after another investigation is had by the Committee. Before such investigation is had the Committee will be obliged to give to the defendant in writing a specification of the Committee's complaint or charge of professional misconduct on his part in each of the 29 lawsuits in which the defendant served as attorney in the Parish of St. Bernard, and thus to afford him a reasonable opportunity to defend himself before the Committee. The idea of remanding the case to the Committee did not occur to us until that method of procedure was mentioned in the brief filed by the Committee in this court. To remand the case to the Committee would be the same as to dismiss the suit, because if remanded to the Committee the suit would not be pending in this or any other court. And the suit will not be renewed unless, after another investigation, according to Section 4 of Article XIII, a majority of the members of the Committee shall be of the opinion that the defendant has probably been guilty of a violation of the laws relating to the professional conduct of lawyers and to the practice of law, or of a willful violation

of a rule of professional ethics of sufficient gravity to evidence a lack of moral fitness for the practice of law.

██ The defendant pleaded also that the Committee did not have authority to investigate matters which were brought to the attention of the Committee merely by the disclosures made in the Meraux case and without any formal complaint being made to the Committee. Our ruling on that point is that it is not necessary that someone should demand of the Committee the bringing of a suit to disbar or suspend or even reprimand an attorney at law in order to give the Committee authority to make the investigation provided for in Sections 2, 3, 4 and 5 of Article XIII. What we do hold is that before the Committee can make such an investigation as the basis or prerequisite for the filing of a suit to disbar or suspend a lawyer, the Committee must give him reasonable notice and information of the matter or matters to be investigated, so as to give him a reasonable opportunity to defend himself before the Committee; and if the defendant demands it the Committee must furnish him a specification of the nature and cause of the accusation against him, in such detail as to give him a reasonable opportunity to defend himself before the Committee.

██ The defendant pleads also that the Committee had no authority to investigate matters which occurred previous to the creation of the Committee, and hence no authority to investigate the defendant's conduct in the handling of the divorce cases which were finally disposed of before March 12, 1941, the date on which the Committee was created. It is not shown or even alleged by the defendant that his conduct in these divorce suits was investigated by the Committee on Professional Ethics and Grievances which was the predecessor of the present Committee; in fact it is not even alleged that the matters of which the Committee is complaining were disclosed previous to the creation of this Committee. If in fact the predecessor of this Committee considered the matters now complained of, or had an opportunity to consider them, the defendant may present that fact in his defense before the Committee before another suit for disbarment can be filed.

The defendant pleads also that the facts alleged in the petition of the Committee do not disclose or support a cause of action for disbarment or suspension. Inasmuch as the present suit must be dismissed for the failure of the Committee to give the defendant sufficient notice and information previous to the investigation, there is no necessity for considering now whether the petition in the present suit discloses a cause of action. It will be time enough to consider the question of a cause of action if the Committee renews the suit after having another investigation.

The defendant makes several other pleas in his exception to the present suit, which pleas need not be considered now that we have concluded to dismiss the suit because of the failure of the Committee to give the defendant the notice which Section 3 of Article XIII requires as a prerequisite to the filing of a suit for disbarment or sus-

pension of an attorney at law. These pleas, which we shall not consider now, have reference mainly to the admissibility or sufficiency of the evidence which was introduced in the investigation by the Committee, and which probably will be introduced again if another investigation is had. It will be time enough for the defendant to urge his complaint in that respect if and when another investigation is had.

The opinion and decree rendered today in Matter of Fallon, La.Sup., 16 So.2d 532, is consistent with the opinion which we are rendering in this case, because in Fallon's case we found that he had appeared before the Committee with his attorney and made no objection to the form or sufficiency of the notice which had been given him by the Committee. Hence the defendant in that case waived whatever objection he might have had to the form or sufficiency of the notice.

This suit is dismissed, reserving to the Louisiana State Bar Association and its Committee on Professional Ethics and Grievances the right to renew the suit after an investigation has been had in accordance with Sections 3, 4 and 5 of Article XIII of the Articles of Incorporation of the Association, and in accordance with the views which we have expressed.

ROGERS, Justice (dissenting).

I am unable to reconcile the ruling in this case with the ruling in the proceeding entitled In re Steiner, No. 36,315 of the docket of this court.

Steiner and two other persons were indicted for the use of the mails in further-

ance of a scheme to defraud, in violation of section 215 of the Criminal Code. 18 U.S.C.A. § 338. The indictment charged that Steiner and his codefendants evolved and put into practice a scheme to procure fraudulent reductions on tax assessments on real and personal property in the City of New Orleans. Steiner, a lawyer, solicited and secured taxpayer clients, agreeing for a fee to secure a reduction of tax assessments from the Louisiana Tax Commission. One of Steiner's codefendants, the chief clerk of the New Orleans office of the Tax Commission, by virtue of his position, had the client's assessments reduced on the tax rolls and approved by the Commission. Thereafter the taxpayer paid the taxes on the basis of the fraudulently reduced assessment. The other codefendant, a woman, acted as a go-between for Steiner and the chief clerk.

Steiner charged the clients a fee of usually one-half of the tax savings and it was agreed that upon collection of the fee he was to receive one-fourth, the remainder to be divided between his codefendants. Steiner was also indicted in the State Court for the crime of bribery.

The indictments of Steiner for offenses affecting the public fisc became generally known to the community. By reason of their notoriety, knowledge of these criminal prosecutions was brought home to the Committee on Professional Ethics and Grievances.

After the prosecution had been pending in the State court for more than a year without any attempt being made to bring

the case to trial and when the case in the Federal court, which had been pending several months, was about to be fixed for trial, the Committee, acting under the authority of Article 13 of the Articles of Incorporation of the Louisiana State Bar Association, undertook to investigate, contradictorily with Steiner, his alleged unprofessional conduct with a view of determining whether it was of sufficient gravity so as to require that the Committee institute in this court a suit for his suspension or disbarment. Accordingly, on June 15, 1941, Steiner was notified in writing that the matter of his alleged unprofessional conduct, based on his connection with certain fraudulent tax reductions in the Parish of Orleans, would be considered by the Committee in its office on a date and hour fixed and that he was required to be present at that time with any witnesses or documentary evidence he might wish to produce in his behalf. Whereupon Steiner presented a petition to this Court seeking a writ of prohibition against the Committee. In his petition he alleged that under Article 13 of the Articles and Rules of the Louisiana State Bar Association, as approved by this Court, the Committee was only empowered to investigate complaints of professional misconduct on the part of members of the Bar; that inasmuch as there were no complaints pending against Steiner and no charges filed against him, the Committee was without right or jurisdiction to institute an investigation against him; that on July 2, 1941, Steiner appeared before the Committee and, through his attorney, notified it that it was without right to investigate him, as no

charges were pending against him and he was not given an opportunity to answer any charges or to know what they were. Steiner alleged, in paragraph 9 of his petition, "that despite this the said Committee refused to stop the investigation but continued to attempt to go on with the said investigation in violation of law and in violation of the rules of this Court."

The Committee filed an opposition to Steiner's application for writs of prohibition in which it alleged its creation by this Court as a Committee on Professional Ethics and Grievances and that its powers to act had not been restricted by the Court but were inherent in it; "that this Committee has knowledge as a matter of common notoriety that Arthur A. Steiner, the applicant for writs of prohibition, has been indicted in both the State and Federal Courts; that although these indictments have been pending in the State court for more than one year and in the Federal court for several months, no attempt has been made in the State court by the authorities to bring the charges to trial; that the charges in the Federal court will be fixed for trial for some time shortly; that the conduct of the said Arthur A. Steiner, as alleged in the indictments, if true, constitutes misconduct and that it is the duty of this Committee to investigate any unethical conduct on the part of lawyers; that Article XIII of the Articles of Incorporation of the Louisiana State Bar Association does not require that a written complaint of unprofessional conduct be made against a member of the bar, but simply provides that notice shall be given to any person complained against;

that this Committee notified Steiner that it would investigate his conduct and a copy of the notice was attached to the Committee's opposition.

The Committee further set forth that section 10 of Article VII of the Constitution vested this Court with exclusive original jurisdiction in all disbarment cases involving misconduct of members of the Bar and that the Court has vested in the Committee the same inherent power which the Court has of initiating investigations of any alleged misconduct of members of the Bar.

The Committee further averred that section 2 of Article XIII of the Articles of Incorporation of the Louisiana State Bar Association does not apply to investigations made by the Committee on its own initiative, but only to a complaint made by some party against a lawyer for unethical conduct and even then a bill of specifications of the complaint is not required but simply notice of the filing of the complaint would be sufficient.

And the Committee prayed that Steiner's application for writs of prohibition be refused.

After considering the allegations of Steiner's petition and the Committee's opposition thereto, this Court refused to grant Steiner a writ of prohibition on the ground that "the Committee is not exceeding its authority." See In re Arthur Steiner, No. 36,315.

Steiner was subsequently tried and convicted in the Federal court on the indictment charging him with using the mails in furtherance of a scheme to defraud. On appeal to the United States Circuit Court of Appeals, Fifth Circuit, his conviction was affirmed. See Steiner v. United States, 134 F.2d 931. Steiner's petition for a writ of certiorari to the Circuit Court of Appeals, Fifth Circuit, was denied by the United States Supreme Court, 319 U.S. 774, 63 S. Ct. 1439.

After Steiner's application for a writ of prohibition was refused by this Court, the Committee instituted disbarment proceedings against him. The Committee's petition alleged that after due investigation had been made of Steiner as provided in section 3 of Article XIII of the Articles of Incorporation of the Louisiana State Bar Association, in the opinion of the Committee sufficient cause existed for the filing of charges for his disbarment. The Committee then alleged the specific acts of misconduct committed by Steiner as a member of the Bar in connection with his procuring, in association with other persons, fraudulent reductions in tax assessments on real and personal property situated in the City of New Orleans. Steiner appeared and filed an exception of vagueness to the petition of the Committee. The case was heard on the exception which was overruled. See In re Steiner, 199 La. 500, 6 So.2d 641. Steiner then answered the petition and on application of the Committee a Commissioner has been appointed to take the evidence in the case, which is now pending in this Court.

The Committee is not limited in its investigation to cases in which complaints are

made against an attorney. It has power to act itself whenever it has probable cause to believe that an attorney has been guilty of unprofessional conduct. It was so held by the Court in the matter of the disbarment proceeding instituted against Henry E. Fallon, La.Sup., 16 So.2d 532. It was also held in the majority opinion handed down in this case, thus: "The defendant pleaded also that the Committee did not have authority to investigate matters which were brought to the attention of the Committee merely by the disclosures made in the Meraux Case and without any formal complaint being made to the Committee. Our ruling on that point is that it is not necessary that someone should demand of the Committee the bringing of a suit to disbar or suspend or even reprimand an attorney at law in order to give the Committee authority to make the investigation provided for in Sections 2, 3, 4 and 5 of Article XIII." After announcing that correct principle of law, the author of the majority opinion says: "What we do hold is that before the Committee can make such an investigation as the basis or prerequisite for the filing of a suit to disbar or suspend a lawyer, the Committee must give him reasonable notice and information of the matter or matters to be investigated, so as to give him a reasonable opportunity to defend himself before the Committee; and if the defendant demands it the Committee must furnish him a specification of the nature and cause of the accusation against him, in such detail as to give him a reasonable opportunity to defend himself before the Committee."

As I view this case, it is immaterial whether the investigation undertaken by the Committee was based on the complaint of some third person or was initiated by the Committee itself, because the Committee or some member thereof acquired knowledge of certain facts or circumstances that lead to the belief the defendant, Armstrong, has been guilty of unprofessional conduct. In either case, the procedure set forth in Article XIII is the same. I do not understand that the provisions of the Article contemplate or require two investigations by the Committee, that is to say, an ex parte preliminary investigation to determine whether a contradictory final investigation should be undertaken with a view of determining whether there exists probable cause for instituting a suit for the suspension or disbarment of the attorney whose conduct is being investigated.

I can perceive no difference in principle between the investigation conducted by the Committee in the case of Steiner and the investigation conducted by the Committee in the matter of Armstrong. In each case, the notice to the attorney involved was to appear before the Committee at its office, at a time fixed, to answer certain charges of alleged misconduct which are referred to in the notice, with the further direction that the attorney present at that time any witnesses or documentary evidence he might wish to produce in his behalf. In my opinion, therefore, the Committee was justified in relying on the ruling of this Court in the Steiner case in its reply, through its Chairman, to the objection made by the defend-

ant, through his attorney, to the authority of the Committee to investigate his alleged misconduct, and to defendant's contention that he was entitled to a notice of the complaint and a reasonable opportunity to defend himself.

Neither the investigation in the Steiner case nor the investigation in this case was merely a preliminary investigation to determine whether a further investigation should be had for the purpose of determining whether probable cause existed for the institution of a disbarment proceeding against the respective attorneys. In each case, the Committee attempted to conduct the investigation contradictorily with the attorney involved for the purpose of determining after a hearing whether, in the opinion of the majority of the Committee, the charges of professional misconduct were of sufficient gravity for the Committee to institute a disbarment proceeding. As a matter of fact, it was the only investigation undertaken by the Committee in each case before the disbarment proceeding was actually filed. The only reason that Steiner and Armstrong, the present defendant, were not heard by the Committee is due to the fact that they refused to appear at the hearing fixed by the Committee when they were invited to do so.

It is difficult for me to perceive how the defendant in this case could be under any misapprehension as to his alleged professional misconduct which it was the purpose of the Committee to investigate. The investigation was the direct result of the proceeding instituted by Perez, District Attorney v. Meraux, Judge, 201 La. 498, 9 So.2d 662, in which Judge Meraux was removed from the office of Judge of the district court for the 25th Judicial District, composed of the Parishes of St. Bernard and Plaquemines. One of the charges against Judge Meraux was that his court had been conducted as a divorce mill in that divorces and annulments of marriages had been granted in 100 cases described in the petition as collusive and fraudulent lawsuits. In these lawsuits, four lawyers, one of whom was the defendant, were involved as the attorneys of record, representing either the plaintiff or the defendant. This is shown by the majority opinion in this case which also sets forth: "In the petition in this case it is alleged that the defendant, Armstrong, acted in his professional capacity as attorney at law in 29 of the 100 suits for divorce or for annulment of a marriage, and that judgments were obtained in the 29 cases by fraud or collusion between the plaintiff and defendant and with the concurrence of the presiding judge. The 29 suits are listed and identified in the Committee's petition by their title and number on the docket of the 25th Judicial District Court in and for the Parish of St. Bernard."

The trial of the case for the removal from office of Judge Meraux obtained wide publicity throughout the State, particularly in the Parishes of Orleans, St. Bernard and Plaquemines. All the charges on which the proceeding was based, particularly the charge that Judge Meraux had been conducting his court as a divorce mill in collusion with defendant and three other lawyers whose names were given, became matters of public notoriety. The testimony

taken and the documentary evidence offered in the case were filed in this Court. A portion of the documentary evidence, consisting of the records of the district court in the divorce and annulment cases in which defendant and the other lawyers were involved, was brought to the Court in the original form. On the record as thus made up, this Court rendered an opinion and decree removing Judge Meraux from office. The author of the opinion in that case, among other matters, discussed extensively the charge that Judge Meraux illegally granted judgments of divorce and annulments in collusion with the attorneys and litigants in the cases enumerated in the petition for Judge Meraux's removal. See Perez v. Meraux, 201 La. 498, 9 So.2d 662. The discussion in the Court's opinion of that particular charge against Judge Meraux was what prompted the Committee under the duty imposed upon it to undertake to investigate contradictorily with the defendant and the other attorneys involved their alleged misconduct in connection with the divorce and annulment suits in the Parish of St. Bernard in which they respectively appeared as attorneys. The notice addressed by the Committee to the defendant, Armstrong, specifically informed him that it was investigating the "alleged improper obtaining of divorces by you in various cases in the Parish of St. Bernard."

In these circumstances, it is inconceivable that the defendant had no knowledge of the matters which the Committee proposed to investigate in connection with the divorce suits in St. Bernard Parish in which he appeared as attorney. Certainly a lawyer who prosecutes or defends a suit in which the proceedings are not legal has or should have notice and knowledge of the illegalities. In any event, the records were open to public inspection and defendant could have easily obtained information, if he did not already possess it, as to what particular cases the Committee had in mind. If the defendant, Armstrong, had appeared at the hearing fixed by the Committee as did Henry E. Fallon, one of the attorneys also charged with misconduct in connection with divorce and annulment cases in the Parish of St. Bernard, he would have been furnished with a list of the cases if he had requested it. and been given a reasonable opportunity to make his defense before the Committee. The fact that Fallon did not see fit to present his defense to the Committee does not alter the situation. Instead of cooperating with the Committee, which is merely an arm of the Court, defendant assumed an antagonistic attitude, leaving the Committee no other recourse than to institute the proceeding for his disbarment after the Committee had investigated the charges against him as best it could in the absence of any explanation on his part.

In my opinion there is nothing to be gained by dismissing this proceeding with the reservation to the Committee of the right to renew the proceeding after further investigating the defendant's conduct in connection with the divorce and annulment suits in the Parish of St. Bernard with which he was connected. I regard such a proceeding as a useless formality. The suggestion contained in the majority opinion that the defendant might convince the

Committee that he was innocent of the charges is, I respectfully suggest, more theoretical than factual. The defendant is now in possession of all the facts which the Committee alleged constitute his professional misconduct. It serves no useful purpose to require the Committee to serve defendant with a copy of the charges contained in the petition for disbarment since defendant has already been served with a copy of the petition containing the charges. The defendant was not deprived of any substantial right by the action of the Committee. He contested the notice sent to him by the Committee and refused to appear at the hearing to cross-examine witnesses and to present his evidence. The Committee could not force defendant to appear and testify. There is no assurance that defendant will act differently on a reinvestigation by the Committee of his alleged professional misconduct. Whatever humiliation or embarrassment has been caused the defendant by the institution of the suit for his disbarment has already been suffered by him. If the Committee, after reinvestigating defendant's conduct, adheres to its opinion that the suit for defendant's disbarment should be reinstituted, he will only suffer further humiliation and embarrassment by the filing of the new suit.

Therefore, in the final analysis, defendant's complaint that he was not given reasonable notice and sufficient information of the matters the Committee intended to investigate loses its force, if any it had, because he has now been given the notice and information which he desires. The investigation the Committee is required to make

into the alleged misconduct of an attorney under Rule XIII is not the trial of an action or suit. No judgment can be taken against the attorney who is the subject of inquiry. The investigation imposed upon the Committee by Article XIII is merely for the purpose of determining whether the conduct of the attorney under investigation exhibits *probable cause* for the institution of a suit for his suspension or disbarment. The ultimate decision in all disbarment proceedings rests with the Court and not with the Committee.

No more delicate responsibility is placed upon the Court than that of determining whether a member of the Bar should be disciplined for unprofessional conduct. In all such proceedings necessarily every facility is afforded the defendant to make a proper defense. The responsibility imposed upon the Committee is no less delicate than that imposed upon the Court for which it acts in such matters. Article XIII provides a simple and expeditious method for regulating the conduct of members of the Bar, and the work assigned to the Committee for effecting that purpose should not be retarded or made more onerous by the rigorous interpretation placed upon the Article by the ruling in this case.

Because of the facts and circumstances which I have hereinabove set forth, it is my opinion that the Court should proceed to hear and dispose of the case and not dismiss it. In such a hearing, the burden would be upon the Committee to sustain the charges by the production of lawful evidence; otherwise, the proceeding would be dismissed.